POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY CHIN ZHI KUANG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ATARA BIOTHERAPEUTICS, INC., ANHCO THIEU NGUYEN, PASCAL TOUCHON, ERIC HYLLENGREN, and YANINA GRANT-HUERTA, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Jeremy Chin Zhi Kuang ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the

1

Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Atara Biotherapeutics, Inc. ("Atara" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Atara securities between May 20, 2024 and January 9, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Atara develops therapies for patients with solid tumors, hematologic cancers, and autoimmune diseases in the U.S. and the United Kingdom ("U.K."). The Company's lead product candidate is tabelecleucel (also referred to as tab-cel or EBVALLO), a T-cell immunotherapy program for the treatment of, *inter alia*, Epstein-Barr virus positive post-transplant lymphoproliferative disease ("EBV+ PTLD").

2

3.    Atara is partnered with Pierre Fabre Médicament, a subsidiary of the Pierre Fabre Laboratories group (collectively, "Pierre Fabre"), for the commercialization of tabelecleucel.  The Company relies in significant part on milestone payments—*i.e.*, financial payments conditioned upon Atara achieving specific developmental targets for tabelecleucel—by Pierre Fabre, to fund its operations, as well as certain of Pierre Fabre's services to execute on its business activities, particularly those related to tabelecleucel's potential regulatory approval.

4.    In May 2024, Atara announced its submission of a Biologics License Application ("BLA") to the U.S. Food and Drug Administration ("FDA") for tabelecleucel as a monotherapy for the treatment of adult and pediatric patients two years of age and older with EBV+ PTLD who have received at least one prior therapy (the "tabelecleucel BLA").  The tabelecleucel BLA was purportedly supported by data from the Company's Phase 3 ALLELE study evaluating tabelecleucel as a treatment for EBV+ PTLD.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain manufacturing issues, as well as deficiencies inherent in the ALLELE study, made it unlikely that the FDA would approve the tabelecleucel BLA; (ii) accordingly, tabelecleucel's regulatory prospects were overstated; (iii) the aforementioned manufacturing issues also subjected Atara to a

3

heightened risk of regulatory scrutiny, as well as jeopardized its ongoing clinical trials; (iv) all the foregoing was likely to have a significant negative impact on Atara's business and financial condition; and (v) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

6.   The truth began to emerge on January 16, 2025, when Atara issued a press release announcing its receipt of a Complete Response Letter ("CRL")—*i.e.*, an FDA notice that an application will not be approved in its present form— regarding the tabelecleucel BLA, stating that "[t]he CRL was solely related to observations as part of a standard pre-license inspection of a third-party manufacturing facility for EBVALLO."

7.   On this news, Atara's stock price fell $5.33 per share, or 40.5%, to close at $7.83 per share on January 16, 2025.

8.   Then, on January 21, 2025, Atara issued a press release announcing "that the [FDA] has placed a clinical hold on Atara's active Investigational New Drug (IND) applications"[1] due to "inadequately addressed GMP [good manufacturing practice] compliance issues identified during the pre-license inspection of the third-party manufacturing facility referenced in the [CRL]" issued in connection with the tabelecleucel BLA.

---

[1] An IND application is a prerequisite to administer an investigational drug or biological product to humans, for example, in clinical trials, under applicable FDA regulations when not the subject of an approved New Drug Application or BLA.

4

9.     On this news, Atara's stock price fell $0.52 per share, or 7.91%, to close at $6.05 per share on January 21, 2025.

10.     The truth continued to emerge on January 12, 2026, when Atara issued a press release announcing that the FDA had issued another CRL regarding the tabelecleucel BLA—which the Company had resubmitted to the FDA in July 2025—stating that "[t]he CRL indicates that the FDA is unable to approve the EBVALLO™ BLA in its present form" because "the single arm ALLELE trial . . . is no longer considered to be adequate to provide evidence of effectiveness for accelerated approval" and "the trial's interpretability is confounded due to trial study design, conduct, and analysis."

11.     On this news, Atara's stock price fell $7.79 per share, or 56.99%, to close at $5.88 per share on January 12, 2026.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

5

15. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Atara is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

16. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17. Plaintiff, as set forth in the attached Certification, acquired Atara securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18. Defendant Atara is a Delaware corporation with principal executive offices located at 1280 Rancho Conejo Boulevard, Thousand Oaks, California 91320. The Company's common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "ATRA".

19. Defendant AnhCo Thieu "Cokey" Nguyen ("Nguyen") has served as Atara's President and Chief Executive Officer ("CEO") since September 9, 2024, before which he served as the Company's Chief Scientific and Technical Officer at all relevant times.

6

20. Defendant Pascal Touchon ("Touchon") served as Atara's President and CEO from before the start of the Class Period to September 9, 2024, after which he served as the Company's Chairman of the Board of Directors until September 2, 2025.

21. Defendant Eric Hyllengren ("Hyllengren") served as Atara's Chief Financial Officer from before the start of the Class Period to March 31, 2025, and as the Company's Chief Operating Officer from October 14, 2024 to March 31, 2025.

22. Defendant Yanina Grant-Huerta ("Grant-Huerta") has served as Atara's Chief Accounting Officer since March 31, 2025.

23. Defendants Nguyen, Touchon, Hyllengren, and Grant-Huerta are collectively referred to herein as the "Individual Defendants".

24. The Individual Defendants possessed the power and authority to control the contents of Atara's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Atara's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Atara, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations

7

being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

25. Atara and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

26. Atara develops therapies for patients with solid tumors, hematologic cancers, and autoimmune diseases in the U.S. and U.K. The Company's lead product candidate is tabelecleucel (also referred to as tab-cel or EBVALLO), a T-cell immunotherapy program for the treatment of, *inter alia*, EBV+ PTLD.

27. Atara is partnered with Pierre Fabre for the commercialization of tabelecleucel. The Company relies in significant part on milestone payments—*i.e.*, financial payments conditioned upon Atara achieving specific developmental targets for tabelecleucel—by Pierre Fabre, to fund its operations, as well as certain of Pierre Fabre's services to execute on its business activities, particularly those related to tabelecleucel's potential regulatory approval.

28. In December 2017, Atara initiated two Phase 3 studies for tabelecleucel to support approval in two separate indications: (i) the treatment of EBV+ PTLD following hematopoietic cell transplant ("HCT"), referred to as the MATCH study; and (ii) the treatment of EBV+ PTLD following solid organ

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

transplant ("SOT") in patients who have failed rituximab, referred to as the ALLELE study.

29.    In 2019, after discussion and purported alignment with regulators, Atara combined MATCH and ALLELE into a single study, collectively referred to as the ALLELE study, which consists of an HCT cohort for EBV+ PTLD patients who have failed rituximab, and a single SOT cohort for EBV+ PTLD patients who have failed prior treatment with rituximab with or without chemotherapy.

**Materially False and Misleading Statements Issued During the Class Period**

30.    The Class Period begins on May 20, 2024, when, during pre-market hours, Atara issued a press release announcing its submission of the tabelecleucel BLA to the FDA.  The press release touted that "[t]he [tabelecleucel] BLA is supported by pivotal and supportive data covering more than 430 patients treated with tab-cel across multiple life-threatening diseases including the latest pivotal ALLELE study data that demonstrated a statistically significant 48.8% Objective Response Rate (ORR) ($p<0.0001$) and favorable safety profile consistent with previous analyses."

31.    In addition, the press release quoted Defendant Touchon as stating, in relevant part:

> The BLA submission for tab-cel represents a significant moment for Atara, our partner Pierre Fabre, and the broader allogeneic T-cell therapy field, and is a critical step towards our goal of delivering this first-of-its-kind treatment to EBV+ PTLD patients in the U.S. . . . . We now look forward to continued collaboration with the FDA on its

9

review and with Pierre Fabre as they actively prepare for the potential launch of this innovative therapy in the U.S.

32.   On July 17, 2024, Atara issued a press release announcing that the FDA had accepted the tabelecleucel BLA for priority review with a Prescription Drug User Fee Act ("PDUFA") target action date of January 15, 2025.  The press release contained the same statements as referenced in ¶ 30, *supra*, regarding the trial data purportedly supporting the tabelecleucel BLA.

33.   The press release also quoted Defendant Touchon as stating, in relevant part:

> The acceptance of the tab-cel BLA is a significant milestone towards making this first-of-its-kind treatment available to patients in the U.S. . . . . We continue to work closely with the Pierre Fabre Laboratories team to help prepare for the potential launch in the U.S. in early 2025, along with the potential label expansion multicohort Phase 2 EBVision trial.

34.   On August 12, 2024, Atara issued a press release reporting its second quarter ("Q2") 2024 financial results and operational progress.  The press release contained substantively the same statements as referenced in ¶ 30, *supra*, regarding the trial data purportedly supporting the tabelecleucel BLA.

35.   The press release also quoted Defendant Touchon as stating, *inter alia*:

> Building on the recent BLA acceptance with Priority Review for tab-cel, we are making significant progress with the agency towards the target action date of January 15, 2025, while supporting our partner Pierre Fabre with their U.S. launch preparation[.]

* * *

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Following the landmark milestone of the world's first-ever approval of an allogeneic T-cell therapy and with the potential first U.S. approval approaching, we are advancing our differentiated allogeneic CAR-T programs into the clinic.

36.     Also on August 12, 2024, Atara filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q2 ended June 30, 2024 (the "Q2 2024 10-Q"). The Q2 2024 10-Q touted that the tabelecleucel BLA's "data package . . . included pivotal and supportive data covering more than 430 patients treated with tab-cel across multiple diseases."

37.     With further respect to the tabelecleucel BLA and Defendants' preparatory work to submit the same, the Q2 2024 10-Q stated, in relevant part:

Throughout 2023, we held a number of meetings with the FDA on clinical and CMC [chemistry, manufacturing, and controls] aspects for a potential BLA submission for tab-cel. Ultimately, we reached agreement with the FDA on the comparability of tab-cel product manufactured using a different process version with the intended commercial product and subsequently held a pre-BLA meeting with the FDA that supported our plan to submit the tab-cel BLA in [Q2] of 2024. The BLA was submitted in May 2024, and the FDA accepted the BLA submission in July 2024 and granted priority review with a [PDUFA] target action date of January 15, 2025.

38.     With respect to Atara's purported "manufacturing process know-how" and plans to bolster the same, the Q2 2024 10-Q stated, *inter alia*:

Concurrently with the in-license of our existing product and product candidates, we acquired manufacturing process know-how and, in some cases, inventory of process intermediates and clinical materials from our partners.

* * *

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The processes by which some of our product and product candidates are manufactured were initially developed by our partners for clinical purposes. We intend to evolve the processes developed by our partners and the processes developed by us to support advanced clinical studies and commercialization requirements. We similarly intend to evolve the processes originating at Atara to support advanced clinical studies and commercialization requirements.

39.     With respect to Atara's purported efforts to remediate manufacturing control issues at a third-party contract manufacturing organization ("CMO") for tabelecleucel, the Q2 2024 10-Q stated, in relevant part:

[W]e have been informed by a CMO of mold and other contamination in certain manufacturing suites related to the manufacture of finished Ebvallo and tab-cel product and intermediates at the CMO's facility . . . . We continue to work with the CMO to investigate and remediate contamination issues[.]

Notably, the Q2 2024 10-Q did not indicate that the foregoing issues foreclosed the FDA's approval of the tabelecleucel BLA.

40.     Appended as exhibits to the Q2 2024 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Touchon and Hyllengren certified that the Q2 2024 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

41.     On September 3, 2024, Atara issued a press release announcing its entry "into definitive agreements for the issuance and sale of 758,900 shares of its common stock at a purchase price of $8.25 per share and the issuance and sale of

12

pre-funded warrants to purchase up to 3,604,780 shares of its common stock at a purchase price of $8.2499 per share in a registered direct offering" (the "September 2024 Offering"), through which Atara ultimately reaped $36 million in gross proceeds.

42.   On November 12, 2024, Atara issued a press release reporting its third quarter ("Q3") financial results and operational progress.  The press release stated, *inter alia*, that "[t]ab-cel [BLA] is on track with Priority Review and a [PDUFA] target action date of January 15, 2025[.]"

43.   The press release also quoted Defendant Nguyen as stating, in relevant part, that "[t]he first quarter of 2025 is positioned to be transformational for the company, with the potential for FDA approval of tab-cel and transition of this business to our partner Pierre Fabre, repositioning Atara as a fully focused allogeneic CAR-T company with multiple near-term data milestones for our lead program in oncology and autoimmune indications."

44.   Also on November 12, 2024, Atara filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q3 ended September 30, 2024 (the "Q3 2024 10-Q").  The Q3 2024 10-Q contained the same statements as referenced in ¶¶ 36-39, *supra*, regarding the data package supporting the tabelecleucel BLA, Defendants' preparatory work to submit the same, and Atara's "manufacturing process know-how" and related planned improvements, including at its third-party CMO for tabelecleucel.

13

45.    Appended as exhibits to the Q3 2024 10-Q were substantively the same SOX certifications as referenced in ¶ 40, *supra*, signed by Defendants Nguyen and Hyllengren.

46.    The statements referenced in ¶¶ 30-40 and 42-45 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain manufacturing issues, as well as deficiencies inherent in the ALLELE study, made it unlikely that the FDA would approve the tabelecleucel BLA; (ii) accordingly, tabelecleucel's regulatory prospects were overstated; (iii) the aforementioned manufacturing issues also subjected Atara to a heightened risk of regulatory scrutiny, as well as jeopardized its ongoing clinical trials; (iv) all the foregoing was likely to have a significant negative impact on Atara's business and financial condition; and (v) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

**The Truth Begins to Emerge**

47.    The truth began to emerge on January 16, 2025, when, during pre-market hours, Atara issued a press release (the "January 16, 2025 PR") announcing its receipt of a CRL from the FDA regarding the tabelecleucel BLA, stating, *inter*

*alia*, that "[t]he CRL was solely related to observations as part of a standard pre-license inspection of a third-party manufacturing facility for EBVALLO."

48.   The market's reaction to the foregoing news was immediate and severe.  As reported by investor news outlet *Seeking Alpha* that same morning, Atara's stock price was "down ~46% in Thursday morning trading after announcing that the U.S. FDA issued a [CRL] for its immunotherapy Ebvallo (tabelecleucel) for [EBV+ PTLD]."  Further, multiple market analysts slashed their price target ("PT") on the Company's stock based on the foregoing disclosures, including Canaccord Genuity ("Canaccord"), which cut its PT to $17.00 from $21.00, and Freedom Broker, which cut its PT to $13.00 from $17.00.

49.   Following the January 16, 2025 PR's disclosures, Atara's stock price fell $5.33 per share, or 40.5%, to close at $7.83 per share on January 16, 2025.

50.   Then, on January 21, 2025, during pre-market hours, Atara issued a press release (the "January 21, 2025 PR") announcing that the FDA had placed a clinical hold on the Company's active IND applications—including the IND for tabelecleucel as a monotherapy treatment for EBV+ PTLD—because of "the inadequately addressed GMP compliance issues" that caused the FDA to issue the CRL regarding the tabelecleucel BLA, stating, *inter alia*:

> [T]he [FDA] has placed a clinical hold on Atara's active [IND]
> applications. These INDs include the EBVALLOTM (tabelecleucel)
> program as monotherapy treatment for adult and pediatric patients two
> years of age and older with [EBV+ PTLD], as well as ATA3219, an
> allogeneic CD19-targeted CAR-T therapy, for the treatment of non-

15

Hodgkin's lymphoma and systemic lupus erythematosus . . . . Screening and enrollment of new participants in both programs have been paused.

The clinical hold for EBVALLO is directly linked to inadequately addressed GMP compliance issues identified during the pre-license inspection of the third-party manufacturing facility referenced in the [CRL] for EBVALLO that was announced on January 16, 2025. While ATA3219 drug product is manufactured at a separate, fully compliant GMP-certified facility, the starting materials used in its production are affected by the compliance issues at the same third-party facility referenced in the CRL. These issues, which underlie both the CRL and the clinical hold, are specific to the referenced third-party manufacturing facility[.]

51.    The market quickly reacted to the foregoing news as well.  The same morning, during pre-market hours, multiple news outlets, including *Bloomberg* and *Seeking Alpha*, reported on the foregoing disclosures, with both noting that the Company's stock price had declined during pre-market trading hours.

52.    Following the January 21, 2025 PR's disclosures, Atara's stock price fell $0.52 per share, or 7.91%, to close at $6.05 per share on January 21, 2025.

53.    Despite the declines in the Company's stock price on January 16 and 21, 2025, Atara's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, deficiencies inherent in the ALLELE study and tabelecleucel's regulatory prospects.

54.    For example, the January 16, 2025 PR continued to tout that "[t]he [tabelecleucel] BLA . . . is based on results from the pivotal ALLELE study

16

demonstrating a statistically significant 50% Objective Response Rate (ORR) and a favorable safety profile."

55.    The January 16, 2025 PR also quoted Defendant Nguyen as stating, in relevant part:

> Once the third-party manufacturer GMP compliance issues have been adequately addressed, we will file for a resubmission, which we would expect to be potentially approved within six months of resubmission. Atara and its partner Pierre Fabre remain confident in the potential of EBVALLO and are committed to bringing this potential first-in-class medicine to U.S. patients with EBV+ PTLD who have limited treatment options and significant unmet need.

56.    On March 7, 2025, Atara issued a press release reporting its fourth quarter ("Q4") and full year ("FY") 2024 financial results and operational progress. The press release assured investors that the CRL for the tabelecleucel BLA "only cited findings that arose during a pre-license inspection of a third-party manufacturing facility for EBVALLO" and "did not identify any deficiencies related to the manufacturing process, the clinical efficacy, or clinical safety data[,]" thereby indicating to investors that once GMP issues were resolved at the third-party facility, the tabelecleucel BLA was primed for FDA review and approval.

57.    The same day, Atara filed an annual report on Form 10-K with the SEC, reporting its financial and operating results for its Q4 and FY ended December 31, 2024 (the "2024 10-K"). The 2024 10-K contained the same statements as referenced in ¶ 37, *supra*, regarding the tabelecleucel BLA and Defendants' preparatory work to submit the same.

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

58.    With respect to the ALLELE study's data purportedly demonstrating tabelecleucel's efficacy, the 2024 10-K stated, *inter alia*:

In [Q3] 2020, we completed an interim analysis for the ALLELE study. Data from the interim analysis showed a 50 percent objective response rate (ORR) to tab-cel with independent oncologic and radiographic assessment (IORA) in patients with relapsed-refractory EBV+ PTLD following HCT or SOT, that had reached at least six months follow-up after the ORR assessment. This ORR is consistent with previously published investigator assessed data . . . . In December 2023, we presented new data for patients with relapsed or refractory (r/r) or treatment-naïve EBV+ PTLD involving the central nervous system following SOT or HCT. An ORR of 77.8% was observed in 18 central nervous system (CNS) EBV+ PTLD patients including first line PTLD, and the estimated one-year overall survival rate (OS) was 70.6%. The one-year OS for responders was 85.7% versus 0% for non-responders. In January 2024, data from the ALLELE study that was published in *The Lancet Oncology* showed a 51.2% objective response rate and 23-month median duration of response in r/r EBV+ PTLD patients and that tab-cel was well tolerated with no events of graft-versus-host disease as related to tab-cel. In May 2024, we filed the BLA with the FDA using a more recent data cutoff in the BLA submission package, data from the submission package showed similar ORR of 48.8% was demonstrated among patients in the indicated target population, consistent with previous analyses.

* * *

We have performed extensive studies demonstrating analytical comparability between the tab-cel manufacturing process versions used for the pivotal ALLELE study and that intended for commercialization. Comprehensive comparability analyses covered 21 key attributes for potency, purity and alloreactivity. We believe analytic comparability between tab-cel process versions has been demonstrated based on well-established statistical methodology and application of International Council for Harmonization (ICH) guidelines and is further supported by significant and consistent clinical experience.

18

59. Appended as exhibits to the 2024 10-K were substantively the same SOX certifications as referenced in ¶ 40, *supra*, signed by Defendants Nguyen and Hyllengren.

60. On May 15, 2025, Atara issued a press release reporting its first quarter ("Q1") 2025 financial results and operational progress. The press release stated, in relevant part:

> The FDA has lifted the clinical holds on EBVALLO™ studies. Atara plans to resume enrollment in the Phase 3 ALLELE clinical study for patients with [EBV+ PTLD] and the Phase 2 label-expansion multi-cohort clinical study.

> The FDA has granted a date in [Q2] 2025 for a Type A meeting to discuss the plan to address the issues raised by the FDA in the [CRL] issued in January 2025, and the path forward for resubmission of the EBVALLO™ BLA.

> * * *

> Atara remains eligible for significant milestone payments from Pierre Fabre Laboratories upon FDA approval of the EBVALLO™ BLA and related commercial sales of EBVALLO™, as well as significant royalties as a percentage of net sales.

61. The same day, Atara issued another press release announcing "the pricing of an offering of 834,237 shares of its common stock at an offering price of $6.61 per share and pre-funded warrants to purchase 1,587,108 shares of its common stock at an offering price of $6.6099 per pre-funded warrant share in an underwritten registered direct offering to a limited number of existing institutional

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

investors" (the "May 2025 Offering"), through which Atara ultimately reaped $16 million in gross proceeds.

62. Also on May 15, 2025, Atara filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q1 ended March 31, 2025 (the "Q1 2025 10-Q"). The Q1 2025 10-Q contained the same statements as referenced in ¶ 37, *supra*, regarding the tabelecleucel BLA and Defendants' preparatory work to submit the same.

63. Appended as exhibits to the Q1 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 40, *supra*, signed by Defendants Nguyen and Grant-Huerta.

64. On July 14, 2025, Atara issued a press release announcing its resubmission of the tabelecleucel BLA to the FDA. The press release contained the same statements as referenced in ¶ 30, *supra*, regarding the trial data purportedly supporting the tabelecleucel BLA.

65. On July 24, 2025, Atara issued a press release announcing the FDA's acceptance of the tabelecleucel BLA. This press release, too, contained the same statements as referenced in ¶ 30, *supra*, regarding the trial data purportedly supporting the tabelecleucel BLA.

66. On August 11, 2025, Atara issued a press release reporting its Q2 2025 financial results and operational progress. The press release touted that "[t]he [FDA] has accepted the filing of Atara's [tabelecleucel BLA,]" and that "[t]he BLA

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

has been granted Priority Review with a Class 2 Resubmission [PDUFA] target action date of January 10, 2026."

67.    The same day, Atara filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q2 ended June 30, 2025 (the "Q2 2025 10-Q").  The Q2 2025 10-Q stated, *inter alia*, that "[i]n May 2025, we aligned with the FDA on . . . the path forward for resubmission of the tab-cel BLA at a Type A meeting[,]" and that "[w]e believe the tab-cel BLA is on track with a [PDUFA] target action date of January 10, 2026."

68.    The Q2 2025 10-Q also contained the same statements as referenced in ¶ 37, *supra*, regarding the tabelecleucel BLA and Defendants' preparatory work to submit the same.

69.    Appended as exhibits to the Q2 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 40, *supra*, signed by Defendants Nguyen and Grant-Huerta.

70.    On November 12, 2025, Atara issued a press release reporting its Q3 2025 financial results and operational progress.  The press release contained the same statements as referenced in ¶ 66, *supra*, touting Atara's renewed submission, and the FDA's acceptance, of the tabelecleucel BLA, while also stating that "Atara expects to receive an additional $40 million milestone payment from Pierre Fabre Laboratories contingent upon FDA approval of the tab-cel BLA."

71. The same day, Atara filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q3 ended September 30, 2025 (the "Q3 2025 10-Q"). The Q3 2025 10-Q contained the same statements as referenced in ¶¶ 37 and 67, *supra*, regarding the tabelecleucel BLA, Defendants' preparatory work to submit the same, and the BLA purportedly being "on track".

72. Appended as exhibits to the Q3 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 40, *supra*, signed by Defendants Nguyen and Grant-Huerta.

73. The statements referenced in ¶¶ 54-60 and 62-72 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain deficiencies inherent in the ALLELE study made it unlikely that the FDA would approve the tabelecleucel BLA; (ii) accordingly, tabelecleucel's regulatory prospects were overstated; (iii) the foregoing was also likely to have a significant negative impact on Atara's business and financial condition; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Truth Continues to Emerge**

74.     The truth continued to emerge on January 12, 2026, when, during pre-market hours, Atara issued a press release announcing that the FDA had issued another CRL for the tabelecleucel BLA, stating, in relevant part:

> [T[he [FDA] has issued a [CRL] for the EBVALLO™ (tabelecleucel) [BLA] as monotherapy treatment for adult and pediatric patients two years of age and older with [EBV+ PTLD], who have received at least one prior therapy including an anti-CD20 containing regimen.
>
> The CRL indicates that the FDA is unable to approve the EBVALLO™ BLA in its present form.
>
> * * *
>
> [T]he CRL claims that the single arm ALLELE trial . . . is no longer considered to be adequate to provide evidence of effectiveness for accelerated approval. Furthermore, the FDA stated that the trial's interpretability is confounded due to trial study design, conduct, and analysis.

75.     The foregoing news shocked the market. The same day, multiple news outlets reported on the foregoing disclosures, including *Bloomberg*, *Seeking Alpha*, and *RTTNews*, and Atara's stock price fell $7.79 per share, or 56.99%, to close at $5.88 per share on January 12, 2026.

76.     Likewise, the following day, Canaccord downgraded its recommendation on Atara to "hold" from "buy" and slashed its PT on the Company's stock to $6.00 from $25.00.

23

77. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Regulation S-K Item 303

78. Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Atara to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants failed to disclose, *inter alia*, that certain manufacturing issues were rising, or had risen, to a level that jeopardized tabelecleucel's regulatory approval prospects and the viability of the Company's clinical trials to support the same. Defendants' failure to disclose these issues violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

### SCIENTER ALLEGATIONS

79. During the Class Period, Defendants had both the motive and opportunity to commit fraud. For example, during the Class Period, while disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for Atara securities, Defendants sold hundreds of thousands of shares of the Company's common stock, as well as pre-funded warrants to purchase millions of shares of the same, via the September 2024 and

24

May 2025 Offerings. Atara reaped tens of millions of dollars in proceeds from these offerings. Moreover, Defendants' advancement of tabelecleucel towards regulatory approval and commercialization directly translated to potentially tens of millions of dollars in milestone payments from Pierre Fabre, further incentivizing Defendants to provide an unrealistic assessment of tabelecleucel's regulatory prospects.

80.     Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. Tabelecleucel is Atara's lead product candidate. Further, as discussed above, tens of millions of dollars in milestone payments from Pierre Fabre hinged on Defendants' ability to advance tabelecleucel towards regulatory approval and commercialization. As such, the Individual Defendants were undoubtedly laser focused on tabelecleucel's regulatory prospects, most critically that of the tabelecleucel BLA, as exemplified by their numerous statements to investors regarding these subjects during the Class Period. Indeed, Defendants repeatedly reassured investors regarding tabelecleucel's regulatory prospects in numerous press releases and SEC filings charting the tabelecleucel BLA's progress during the Class Period, as alleged *supra*.

81.     Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

82. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Atara securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

83. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Atara securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Atara or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

84. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

85.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

86.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Atara;

- whether the Individual Defendants caused Atara to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Atara securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

87.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members

27

may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

88.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Atara  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Atara securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

89.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

90.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens*

*of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

91. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

92. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

93. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and

29

maintain the market price of Atara securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Atara securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

94.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Atara securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Atara's finances and business prospects.

95.     By virtue of their positions at Atara, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

96.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Atara, the Individual Defendants had knowledge of the details of Atara's internal affairs.

97.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Atara.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Atara's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Atara securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Atara's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Atara securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

98. During the Class Period, Atara securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Atara securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Atara securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Atara securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

99. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

100. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

101.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.   During the Class Period, the Individual Defendants participated in the operation and management of Atara, and conducted and participated, directly and indirectly, in the conduct of Atara's business affairs.  Because of their senior positions, they knew the adverse non-public information about Atara's misstatement of income and expenses and false financial statements.

103.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Atara's financial condition and results of operations, and to correct promptly any public statements issued by Atara which had become materially false or misleading.

104.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Atara disseminated in the marketplace during the Class Period concerning Atara's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Atara to engage in the wrongful acts complained of herein. The

Individual Defendants, therefore, were "controlling persons" of Atara within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Atara securities.

105. Each of the Individual Defendants, therefore, acted as a controlling person of Atara. By reason of their senior management positions and/or being directors of Atara, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Atara to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Atara and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

106. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Atara.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

34

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 23, 2026                    Respectfully submitted,

                                         POMERANTZ LLP

                                         */s/ Jennifer Pafiti*
                                         Jennifer Pafiti (SBN 282790)
                                         1100 Glendon Avenue, 15th Floor
                                         Los Angeles, California 90024
                                         Telephone: (310) 405-7190
                                         jpafiti@pomlaw.com

                                         *Attorney for Plaintiff*

35